UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Derrick Reaves,
    Petitioner

vs                               Case No. 1:02cv100
                                    (Weber, J.; Hogan, M.J.)

James Erwin,[1]
    Respondent

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on Ground Four of the petition (Doc. 1, p. 6), which currently is the only claim remaining to be adjudicated after the dismissal of Grounds One through Three with prejudice on statute of limitations grounds (*see* Docs. 5, 8); respondent's "Return Of Writ" in response to petitioner's claim alleged in Ground Four (Doc. 7); and petitioner's "traverse" briefs in reply to the return of writ (Docs. 9, 10). This matter is also before the Court for sua sponte consideration whether the Order issued March 18, 2003 dismissing Grounds One through Three (Doc. 8) should be vacated in light of the Sixth Circuit's recent en banc decision in *Abela v. Martin,* 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc), *petition for cert. filed,* 72 U.S.L.W. 3506 (U.S. Jan. 20, 2004) (No. 03-1079), overruling prior Sixth Circuit precedents that were relied on in finding the claims to be time-barred in this case. (*See* Doc. 5, p. 8).

---

[1] In the petition, petitioner correctly named as respondent Harry Russell, who was then Warden of Lebanon Correctional Institution (LeCI), because petitioner was incarcerated at LeCI at that time. However, petitioner is now incarcerated at the Chillicothe Correctional Institution, where the current Warden is James Erwin. (*See* Doc. 11). Because James Erwin is the individual who now has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

**Factual And Procedural Background**

The procedural history of this case in the state and federal courts has been exhaustively discussed in this Court's Report and Recommendation and Order filed February 25, 2003, which is incorporated by reference herein. (*See* Doc. 5, pp. 1-5).

In the instant habeas petition signed by petitioner on January 23, 2002 and stamped as "filed" on February 13, 2002, petitioner asserts four grounds for relief in an effort to challenge his murder conviction after retrial before a jury and resulting prison sentence of fifteen (15) years to life imposed by the Hamilton County Common Pleas Court on July 21, 1997. (Doc. 1, pp. 2, 7). He alleges in Grounds One and Two that his trial attorney provided ineffective assistance in violation of the Sixth Amendment when he failed to request jury instructions on the lesser-included offense of voluntary manslaughter and "failed to recognize, argue and brief the fact that Petitioner's conviction for Murder violates the double inference rule and Due Process of Law." (*Id.,* p. 5). He contends in Ground Three that his appellate counsel provided ineffective assistance in violation of the Sixth Amendment by failing to raise the ineffective assistance of trial counsel claims alleged in Grounds One and Two as assignments of error on direct appeal. (*Id.,* p. 6). Finally, he claims in Ground Four that the Ohio Court of Appeals violated his "absolute right to procedural due process of law" when it overruled his motion for delayed reopening of his direct appeal under Ohio R. App. P. 26(B) despite his showing of "cause" for his procedural default in failing to file the reopening application in a timely manner. (*See id.* & attached Memorandum, pp. 2-7).

The claims alleged in Grounds One through Three were first brought to the state courts' attention by petitioner in his motion for delayed reopening pursuant to Ohio R. App. P. 26(B) filed with the Ohio Court of Appeals on August 31, 2001, over two and one-half years after the trial court's judgment was affirmed on direct appeal on December 18, 1998. (*See* Doc. 3, Exs. J, W).[2] Specifically, in that motion, petitioner

---

[2]Petitioner first mentioned his ineffective assistance of counsel claims during the proceedings on his first federal habeas petition filed June 27, 2000, wherein he contended as grounds for relief that (1) he was denied his constitutional right to confront a witness against him, and (2) he was denied due process by the introduction of gruesome photographs. (*See* Doc. 3, Ex. U). The claims were asserted by petitioner in his motion filed September 25, 2000 to stay the federal habeas case or, alternatively, to dismiss the petition without prejudice so that he could

alleged his appellate attorney provided ineffective assistance by failing to assert as assignments of error that petitioner's trial counsel provided ineffective assistance when he (1) did not request lesser-included offense jury instructions, and (2) did not argue in support of his motion for judgment of acquittal that petitioner's conviction was obtained in violation of the rule against double inferences. (*Id.*, Ex. W, Memorandum, pp. 2-10). Petitioner argued as "cause" for his delay in filing that he "was without the assistance of counsel during the running of the nin[et]y (90) day time period from [the Court of Appeals'] final judgment" and that his appellate counsel was ineffective in failing to advise him during that 90-day period of his right to petition the Court of Appeals for reopening of his appeal based upon a possible claim of ineffective assistance of appellate counsel. (*Id.*, Motion & Memorandum, pp. 1-2). In so arguing, petitioner relied on the Sixth Circuit's decision in *White v. Schotten*, 201 F.3d 743 (6th Cir.), *cert. denied*, 531 U.S. 940 (2000), as demonstrating that he had a constitutional right to effective assistance of counsel in filing an application to reopen his appeal. (*Id.*, Memorandum, pp. 1-2).

On October 12, 2001, the Court of Appeals denied petitioner's application, reasoning in relevant part as follows:

> App.R. 26(B) requires an application to reopen an appeal to be filed with the court of appeals within ninety days from the date on which the appellate judgment was journalized, unless the applicant can show good cause for filing at a later time. This court's judgment was journalized on December 18, 1998, and the appellant filed his application to reopen his appeal on August 31, 2001; therefore, the appellant filed his application almost two and one-half years after the ninety-day period had expired.

---

exhaust these new, additional claims in the state courts by way of an application for reopening pursuant to Ohio R. App. P. 26(B). (*See Derrick Reaves v. Harry K. Russell*, Case No. 1:00cv519 (Spiegel, J.), Doc. 11). Although petitioner did not move to amend the petition to include these unexhausted claims as grounds for relief, the court granted the petitioner's motion and dismissed the case without prejudice to refiling after the claims were exhausted in the Ohio courts. (*See id.*, Docs. 15, 17). Petitioner did not file his state application for delayed reopening until over eleven months after he announced in the federal habeas proceeding his intention to exhaust the remedy. Instead, he waited to pursue the state remedy until after the final order was entered on July 13, 2001 adopting the Magistrate Judge's March 7, 2001 Report and Recommendation to the extent it was recommended that petitioner's motion be granted and the petition dismissed without prejudice on exhaustion grounds. (*See* Doc. 3, Ex. V).

3

> The appellant asserts that the filing delay was justified, because he was without legal representation during the ninety-day filing period. This argument fails. The appellant had no right to counsel to assist him in filing his application, see *State v. Dennis* (1999), 86 Ohio St.3d 201, 713 N.E.2d 426, and ignorance of the law, to the extent that it is alleged here to be a consequence of the lack of counsel, does not constitute good cause for a filing delay. . . .

(*Id.*, Ex. X) (citations to state cases omitted).

     Petitioner sought leave to appeal this decision to the Ohio Supreme Court, essentially claiming in his memorandum in support of jurisdiction, as he does here in Ground Four, that he was denied procedural due process by the Court of Appeals' refusal to consider the merits of his ineffective assistance of appellate counsel claims despite his showing of "cause" for his delay in filing the reopening application. (*Id.*, Exs. Y, Z). On January 16, 2002, the Ohio Supreme Court summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. AA).

     In a Report and Recommendation and Order issued February 25, 2003, the undersigned Magistrate Judge recommended that Grounds One through Three be dismissed with prejudice because they are barred from review by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). (*See* Doc. 5, pp. 6-12). This recommendation was adopted by the district judge by Order entered March 18, 2003. (Doc. 8). Respondent was ordered to file a return of writ responding to the remaining claim alleged in Ground Four, which was determined to have been timely filed. (Doc. 5, p. 13).

     In the return of writ filed as ordered by the Court in response to Ground Four, respondent contends that the Ohio Court of Appeals' alleged error in ruling on petitioner's untimely application for reopening presents an issue of state law only, which is not cognizable in this federal habeas proceeding. (*See* Doc. 7, pp. 7-9). In addition, respondent argues that the writ of habeas corpus is not available to petitioner to challenge errors or deficiencies in the reopening matter, which is considered a post-conviction proceeding in Ohio, because the claims address collateral matters and not the underlying state conviction giving rise to petitioner's incarceration. (*See id.*, pp. 9-11). In his "traverse" briefs, petitioner counters these arguments by contending, in reliance on the Sixth Circuit's decision in *White,* that his claim alleged in Ground Four is of constitutional dimension because proceedings on applications for reopening are

4

considered part of the direct appeal as of right in Ohio to which the Fourteenth Amendment's due process and equal protection guarantees, including the right to effective assistance of counsel, attach. (*See* Docs. 9, 10).

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Four That He Was Denied Due Process When The Ohio Court Of Appeals Denied His Delayed Application For Reopening As Untimely Filed

In Ground Four of the petition, petitioner essentially contends he was denied due process when the Ohio Court of Appeals overruled his application for delayed reopening of his appeal without addressing the underlying merits of his ineffective assistance of appellate counsel claims, based on its erroneous determination that petitioner had not demonstrated "cause" for his delay in filing. (Doc. 1, p. 6 & attached Memorandum, pp. 2-7). This claim is governed by the standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA), which provides that a federal habeas petitioner is not entitled to relief unless the state courts' adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court's legal decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529

U.S. at 407-08 (O'Connor, J.).  Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.  The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable.  *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43.  Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412); *see also Lopez v. Wilson,* 355 F.3d 931, 937 (6th Cir. 2004).

In determining under this AEDPA standard whether or not petitioner is entitled to habeas relief based on his claim of constitutional error during the state proceedings on his delayed application for reopening, the Court must first consider what weight, if any, must be accorded the Sixth Circuit's *White* decision relied on by petitioner, which was decided *before* the AEDPA's enactment.  The Sixth Circuit recently addressed this very issue in an analogous case, where the habeas petitioner alleged as a ground for relief that he was denied his constitutional right recognized in *White* to the effective assistance of appellate counsel during reopening proceedings brought under Ohio R. App. P. 26(B) when the Ohio Court of Appeals summarily denied his motion for appointment of counsel in that matter.  *Lopez,* 355 F.3d at 936.  As the Sixth Circuit explained in the introduction:

> In *White*[, 201 F.3d at 752-53,] this Court held that an application to reopen appeal under Rule 26(B) of the Ohio Rules of Appellate Procedure is part of a criminal defendant's direct appeal, rather than part of the state's post-conviction process.  The difference matters because a defendant is constitutionally entitled to counsel only during the direct appeal process.  *Compare Evitts v. Lucey,* 469 U.S. 387, 396 . . . (1985) (holding that a defendant is entitled to effective assistance of counsel on direct appeal), *with Pennsylvania v. Finley,* 481 U.S. 551, 555 . . . (1987) (holding that a defendant is not constitutionally entitled to counsel at any stage of criminal proceedings beyond a direct appeal as of right).

*Id.* at 933.

Although conceding that the petitioner "would easily prevail" on his claim under *White*, the court concluded that "because the standard of review is much more deferential under the AEDPA, *White* is not controlling." *Id.* at 938. In so holding, the court reasoned:

> The *White* decision involved the application of *Evitts* to "a unique aspect of Ohio law," Rule 26(B). . . . Prior to determining the federal constitutional question of whether the petitioner was entitled to counsel in filing his application to reopen direct appeal, the *White* court determined whether a state procedural rule, 26(B), was part of direct or collateral review. As a panel of this Court recently explained:
>
>> . . .[In *White*, which involved the issue of whether counsel's failure to file a timely reopening application constituted "cause" for petitioner's procedural default in the state courts,] the Ohio Public Defender indisputably and grossly failed to abide [by] the ninety-day deadline for 26(B) applications and therefore rendered ineffective assistance of counsel[. However,] this conclusion alone does not establish a constitutional violation because a defendant only has a constitutional right to *effective assistance of counsel when there is a constitutional right to* assistance of counsel *simpliciter. As there is such a constitutional right only on direct and not on collateral review, the resolution of [the] case depended on this classification of 26(B) applications....*
>
> *Lambert v. Warden, Ross Correctional,* 81 Fed.Appx. 1, [4-5] (6th Cir. 2003) (emphasis added).

*Id.* at 938-39.

The court went on to distinguish several published post-AEDPA Sixth Circuit decisions applying the rule in *White* in determining the question only applicable to federal habeas petitions, and thus not considered by the state courts, as to whether the petition is procedurally barred from review under the AEDPA statute of limitations and its tolling provision, 28 U.S.C. § 2244(d)(1)(A) & (d)(2). *See id.* at 939. The court

pointed out:

> By contrast, in cases such as this, in which a federal court must consider the nature of the 26(B) application to determine whether a criminal defendant has the right to counsel in filing such an application, the federal court must grant AEDPA deference to the state court's conclusion that the defendant was not entitled to appointed counsel. Accordingly, even those post-AEDPA Sixth Circuit decisions considering the nature of 26(B) applications for the purpose of determining the timeliness of habeas petitions do not engage in the analysis required here–a determination of whether a state court's decision is contrary to or an unreasonable application of federal law–and the holdings [of] those cases are properly limited to such cases.

*Id.*

Having concluded that the pre-AEDPA *White* decision extending constitutional protections to reopening proceedings in Ohio does not govern the resolution of claims raised in post-AEDPA cases, the court in *Lopez* next examined under the applicable AEDPA standard whether the petitioner had shown a violation of clearly established federal law as determined by the United States Supreme Court as of the time of the Ohio Court of Appeals' challenged decision on May 11, 2000 denying appointment of counsel in the reopening matter. *See id.* In analyzing this issue, the Sixth Circuit acknowledged prior Supreme Court precedents holding that "although the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors," . . . "if a State has created appellate courts as 'an integral part of the ... system for finally adjudicating the guilt or innocence of a defendant,' . . . the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Id.* (quoting *Evitts,* 469 U.S. at 393 (in turn citing *McKane v. Durston,* 153 U.S. 684 (1894), and quoting *Griffin v. Illinois,* 351 U.S. 12, 18 (1956)). The court also acknowledged the Supreme Court's holding in *Douglas v. California,* 372 U.S. 353, 358 (1963), that a criminal defendant has the right to assistance of counsel on his appeal as of right afforded by the State, as well as its holding in *Evitts,* 469 U.S. at 395-98, that such counsel must provide *effective* assistance under the Sixth Amendment. *See Lopez,* 355 F.3d at 940-41.

However, by the same token, the court pointed out that the Supreme Court

explicitly limited its holding in *Douglas* to the first appeal as of right, and indeed as recognized in *Evitts,* has held the right to assistance of counsel does not extend beyond the first appeal as of right to discretionary state appeals or collateral post-conviction proceedings. *See id.* (quoting *Evitts,* 469 U.S. at 394, and *Douglas,* 372 U.S. at 356; citing *Ross v. Moffitt,* 417 U.S. 600 (1974), and *Finley,* 481 U.S. at 555). Upon review of Supreme Court case-law, the court found that "[a]s *Evitts'* canvassing of the relevant precedent reflects, the Supreme Court has never held that a criminal defendant has the right to assistance of counsel to file an application to reopen a direct appeal." *Id.* at 940. Quoting *Douglas,* 372 U.S. at 356, the court further concluded that in distinction to *Douglas* and *Evitts*:

> Here, [petitioner's] request for appointed counsel to file an application to reopen his first appeal as of right is somewhere "beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court." . . . Although a panel of this Court upon de novo review has determined that such a motion falls under the rubric of a direct appeal, under the more deferential standard of review set forth in the AEDPA, it cannot be said that the Ohio Court of Appeals' decision denying the right to appointed counsel was contrary to "clearly established federal law as determined by the Supreme Court," because the result is not different from a case with materially indistinguishable facts.

*Id.* at 941.

This Court is bound by the Sixth Circuit's decision in *Lopez*. As in *Lopez,* 355 F.3d at 939, petitioner's reliance on the pre-AEDPA *White* decision is unavailing, because in this post-AEDPA case, the Court "must grant AEDPA deference" to the conclusion reached by the Ohio Court of Appeals in rejecting petitioner's "cause" argument that petitioner "had no right to counsel to assist him in filing his [reopening] application."[3] (*See* Doc. 3, Ex. X). Moreover, for the reasons given in *Lopez,* 355 F.3d

---

[3]In any event, this Court is doubtful about the "continuing viability" of *White*. *See Eads v. Morgan*, 298 F.Supp.2d 698, 707 (N.D. Ohio 2003). As the court in *Eads* pointed out, the "response of the courts of appeals in Ohio to the ruling in *White* . . . has been overwhelmingly unfavorable." *Id.* at 705; *see also Lambert v. Warden, Ross Correctional,* 81 Fed.Appx. 1, 5 (6th Cir. Sept. 2, 2003) (not published in Federal Reporter) ("[i]n Ohio courts, the response to *White* was unanimously hostile" as in "every single instance that the issue was raised, the Ohio

at 939-41, petitioner is unable to demonstrate under the applicable standard of review set forth in 28 U.S.C. § 2254(d) that the Ohio Court of Appeals' denial of petitioner's motion for delayed reopening of his appeal, which was filed after "the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court," *Douglas,* 372 U.S. at 356, is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court in *Douglas* and *Evitts*.

Accordingly, the Court concludes petitioner is not entitled to federal habeas relief based on his claim alleged in Ground Four that the Ohio Court of Appeals violated his constitutional rights in denying his application pursuant to Ohio R. App. P. 26(B) for delayed reopening of his appeal on timeliness grounds without addressing the merits of his underlying ineffective assistance of appellate counsel claims.

**B. The Court's Prior Order Dismissing Grounds One Through Three As Time-Barred Should Be Vacated Given Recent Changes In Sixth Circuit Law, Which Affect The Resolution Of The Statute Of Limitations Issue In This Case**

Because Grounds One through Three were previously dismissed with prejudice as time-barred (*see* Docs. 5, 8), the disposition of Ground Four would in the usual case conclude the proceedings before this Court. However, since the time the March 18, 2003 Order dismissing Grounds One through Three was entered, the Sixth Circuit issued an en banc decision in *Abela v. Martin,* 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc), *petition for cert. filed,* 72 U.S.L.W. 3506 (U.S. Jan. 20, 2004) (No. 03-1079), which overruled prior Sixth Circuit precedents relied on by the Court in finding Grounds One through Three to be barred from review. Petitioner has not filed a motion to reconsider the prior Order in light of the change in the law to be applied in the Sixth Circuit. However,

---

appellate courts refused to follow the holding of *White*;" moreover, although "the Ohio Supreme Court has not spoken to the *White* issue in its opinions, in its practice rules it implies that 26(B) applications are postconviction matters"). Most importantly, as also pointed out in *Eads,* 298 F.Supp.2d at 706, a Sixth Circuit panel majority recently stated in *Lambert,* 81 Fed.Appx. at 8-9, that in contradiction to *White,* "26(B) applications should be classified as collateral, rather than direct, review," particularly in light of the fact that "the Ohio courts, the authoritative interpreters of Ohio procedure, are unanimous in considering 26(B) applications to be part of collateral review and have held so repeatedly before and after *White,*" and the "Ohio Supreme Court's rules of practice agree" with this interpretation. A petition for rehearing en banc apparently is now pending before the Sixth Circuit for ruling in *Lambert. See Eads,* 298 F.Supp.2d at 706.

because petitioner is a pro se litigant, and it is difficult for even those versed in the law to keep up with the shifting sand changes that have been occurring in the continually evolving habeas statute of limitations area, the Court concludes that in the interest of fairness the statute of limitations issue previously decided against petitioner should be reconsidered sua sponte before the case is terminated on this Court's docket.

In the February 25, 2003 Report and Recommendation adopted by the March 18, 2003 Order (*see* Doc. 8), the Court first determined that Grounds One through Three are governed by the statute of limitations provision set forth in 28 U.S.C. § 2244(d)(1)(A), because they involve allegations of error occurring at petitioner's trial and direct appeal that could have been discovered through the exercise of due diligence before the conclusion of direct review in the Ohio courts. (Doc. 5, pp. 6-7). Under this provision, the statute began to run on February 2, 1999, when petitioner's conviction became "final." (*See id.,* p. 7).

Next, the Court determined that during the one-year limitations period commencing February 2, 1999, the statute ran for twenty-two days before it was tolled from February 24, 1999, when petitioner filed his motion for delayed appeal in the Ohio Supreme Court, until June 30, 1999, when the Ohio Supreme Court denied leave to appeal. (*Id.,* p. 8). At that time, it was well-settled in the Sixth Circuit that the ninety-day period in which petitioner could have sought, but did not seek, further certiorari review by the United States Supreme Court could not to be taken into account for tolling purposes. *See, e.g., Miller v. Collins*, 305 F.3d 491, 494 (6th Cir. 2002); *Johnson v. Wolfe,* 41 Fed.Appx. 733, 734 (6th Cir. June 21, 2002) (not published in Federal Reporter); *Whalen v. Randle,* 37 Fed.Appx. 113, 118 (6th Cir. Mar. 12, 2002) (not published in Federal Reporter); *see also Isham v. Randle,* 226 F.3d 691, 695 (6th Cir. 2000) (holding that "§2244(d)(2) does not toll the limitations period to take into account the time in which a defendant could have potentially filed a petition for certiorari with the United States Supreme Court, following a state court's denial of post-conviction relief"), *cert. denied,* 531 U.S. 1201 (2001). Bound by this line of Sixth Circuit cases, this Court refused to extend the tolling period to include the ninety-day period in which petitioner could have filed a petition for writ of certiorari with the United States Supreme Court from the Ohio Supreme Court's June 30, 1999 order denying a delayed appeal, and concluded the statute of limitations resumed running on July 1, 1999 and expired 343 days later on June 8, 2000. (Doc. 5, p. 8).

The Court next considered whether petitioner's first federal habeas petition "filed" on June 16, 2000 served in any way to toll the limitations period. On July 13, 2001, approximately 13 months after its filing, this prior petition was dismissed without

11

prejudice on petitioner's motion so that he could exhaust ineffective assistance of counsel claims in the Ohio courts. (*See id.,* p. 4). Although at that time it was the established practice of this Court's district judges to equitably toll the running of the statute of limitations during the pendency of a federal habeas petition dismissed without prejudice on exhaustion grounds, in this prior case only, the district judge refused to adopt the Magistrate Judge's equitable tolling recommendation and declined to toll the statute of limitations under the authority of *Duncan v. Walker,* 533 U.S. 167 (2001), which had just been decided by the Supreme Court. (*See* Doc. 3, Ex. V). In the instant case, the Court concluded that petitioner's first habeas petition could not serve to toll the limitations period because it did not constitute an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2)'s tolling provision, "and in any event, the one year limitations period had expired eight days earlier." (*Id.,* p. 9). In so concluding, the Court noted further that "[e]ven if the district court had decided to adopt the Magistrate's recommendation concerning petitioner's first petition and equitably toll the statute of limitations, the result would have been the same. The recommendation called for such tolling only in the event that the limitations had not run, and in this case, the limitations period had expired at the time petitioner filed his first petition." (*Id.* at n.5).

Finally, the Court determined that petitioner's delayed application for reopening filed with the Ohio Court of Appeals on August 31, 2001 did not toll the running of the statute of limitations, which had long since expired, and that "equitable tolling is inappropriate in this case." (*Id.,* pp. 10-12).

The Sixth Circuit's en banc decision in *Abela* significantly impacts this Court's assessment of the statute of limitations issue as it relates to the tolling of the limitations period. In *Abela,* the court held that for purposes of the tolling provision set forth in 28 U.S.C. § 2244(d)(2), "the statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until the conclusion of time for seeking [United States] Supreme Court review of the state's final judgment on that application independent of whether the petitioner actually petitions the Supreme Court to review the case." *Abela,* 348 F.3d at 172-73. In so holding, the court effectively overruled the prior precedents relied on by this Court to find that the statute of limitations expired on June 8, 2000, eight days before petitioner filed his first federal habeas petition. Indeed, in an unpublished decision on-point to the case-at-hand, the Sixth Circuit recently applied the *Abela* ruling in calculating the length of time the statute was tolled during Ohio delayed appeal proceedings. *See Granger v. Hurt,* No. 02-3088, 2004 WL 162549, at *3 (6th Cir. Jan. 23, 2004) (unpublished).

12

Applying *Abela* to this case, the Court must now find that the statute of limitations, which commenced running on February 2, 1999, was tolled during the state delayed appeal proceedings from February 24, 1999 (the date petitioner filed his motion for delayed appeal with the Ohio Supreme Court) until September 29, 1999 (when the ninety-day period expired for filing a petition for writ of certiorari with the United States Supreme Court from the Ohio Supreme Court's June 30, 1999 Order overruling petitioner's delayed appeal motion). The statute of limitations resumed running on September 30, 1999 and expired 343 days later on September 5, 2000 absent application of § 2244(d)'s tolling provision or other equitable tolling principles.

Although under the authority of *Abela* the limitations period thus has been extended an additional ninety days, the Court concludes as determined initially that § 2244(d)'s tolling provision does not apply to further extend the limitations period in this case. First, petitioner's prior federal habeas petition "filed" on June 16, 2000, *before* the expiration of the statute of limitations, does not constitute an "application for State post-conviction or other collateral review" that serves to toll the limitations period under § 2244(d)(2). *See Duncan,* 533 U.S. at 181-82. Second, petitioner's state application filed on August 31, 2001 for delayed reopening of his appeal could not toll the running of the statute that had expired nearly one year earlier. *See Bronaugh v. Ohio*, 235 F.3d 280, 286 (6th Cir. 2000); *see also Davis v. Brigano,* 34 Fed.Appx. 155, 158 (6th Cir. Feb. 7, 2002) (not published in Federal Reporter); *Banks v. Ohio,* 238 F.Supp.2d 955, 958 (S.D. Ohio 2002) (application for reopening cannot serve to toll limitations period when statute of limitations has long expired).[4]

---

[4]In a recent unpublished decision, a Sixth Circuit panel recently refused to follow *Bronaugh*, holding in direct contrast to that case that under an erroneous, but binding, prior Sixth Circuit decision addressing the issue of "waiver" based on petitioner's procedural default in the state courts, *White v. Schotten,* 201 F.3d 743, 752-53 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000), the statute of limitations is not "tolled" but "begins to run anew at the conclusion of the 26(B) process." *Lambert v. Warden, Ross Correctional,* 81 Fed.Appx. 1, 8-10 (6th Cir. Sept. 2, 2003) (not reported in Federal Reporter). As noted earlier, *see supra* p. 10 n.3, a petition for rehearing en banc apparently has been filed in *Lambert*. *See Eads v. Morgan,* 298 F.Supp.2d 698, 706 (N.D. Ohio 2003). If this Court were to adopt the position taken by the panel majority in *Lambert*, the statute of limitations question previously resolved against petitioner with respect to Grounds One through Three would have to be revisited for the additional reason that petitioner filed his application for delayed reopening pursuant to Ohio R. App. P. 26(B) in the Ohio courts after the statute of limitations was found to have expired. (*See* Doc. 5, pp. 9-10). However, on this particular issue, the Court chooses to continue to follow the published *Bronaugh* decision, which unlike *White* directly governs the resolution of the statute of limitations issue faced here and carries more weight as binding authority than the unpublished

Nevertheless, because of *Abela*'s application to this case, a close question is now presented as to whether equitable tolling principles should apply to preclude the dismissal of Grounds One through Three on statute of limitations grounds. Under *Abela,* petitioner's first federal habeas petition was timely filed. Therefore, the Court must consider whether the statute of limitations should be equitably tolled during the pendency of that petition, which was dismissed without prejudice to refiling after petitioner exhausted the available state remedy of a delayed application to reopen his appeal.

In his concurring opinion in *Duncan,* 533 U.S. at 184, Justice Stevens joined by Justice Souter suggested that, although a federal habeas petition cannot toll the running of the statute of limitations under § 2244(d)(2), the federal court's equitable powers may be used to toll the limitations period for "the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted." Post-*Duncan,* several lower courts have applied equitable tolling principles to toll the statute of limitations during the pendency of a prior timely-filed federal habeas action dismissed without prejudice on exhaustion grounds when the petitioner exercises reasonable diligence in pursuing his state remedies and returning to the federal court. *See, e.g., Brambles v. Duncan,* 330 F.3d 1197, 1202-04 (9th Cir.), *amended by,* 342 F.3d. 898 (9th Cir. 2003), *petition for cert. filed,* 72 U.S.L.W. 3171 (U.S. Sept. 2, 2003) (No. 03-357); *York v. Galetka,* 314 F.3d 522, 527-28 (10th Cir. 2003); *Corbin v. Straub,* 156 F.Supp.2d 833, 837-38 (E.D. Mich. 2001); *Bolus v. Portuondo*, No. 9:01CV1189(TJM)(GLS), 2003 WL 1571747, at *4 (N.D.N.Y. Mar. 26, 2003) (unpublished) (petitioner entitled to equitable tolling for the time his timely-filed prior federal habeas petition was pending, where the record revealed he had been diligent in pursuing collateral remedies and his prior petition was dismissed without prejudice after his initial request to stay the case until he exhausted state remedies was denied); *Rodriguez v. New York,* No. 01Civ.9374KMWAJP, 2003 WL 289598, at *14 (S.D.N.Y. Feb. 11, 2003) (unpublished) (equitably tolling the statute of limitations because the dismissal of the prior federal habeas action was premised on pre-*Duncan* Second Circuit decisions tolling the limitations period during the pendency of federal habeas corpus petitions, and petitioner had "acted with reasonable diligence from the time his initial petition was dismissed until he filed the current habeas petition"); *DeWindt v. Artuz,* No. 97-CV-2138 (FB), 2002 WL 1034853, at *4-5 (E.D.N.Y. May 23, 2002) (unpublished) (applying equitable tolling principles to avoid prejudice to the petitioner when, without the guidance of *Duncan,* the court dismissed the prior petition instead of holding it in abeyance as requested by petitioner). *But see Rodriguez v. Elo,* 195

---

*Lambert* decision.

F.Supp.2d 934 (E.D. Mich. 2002) (petitioner was not entitled to equitable tolling during the pendency of his prior "mixed" petition containing both exhausted and unexhausted claims, which was voluntarily dismissed by petitioner so that he could return to the state courts "to perfect his claims").

Here, as in *Bolus* and *DeWindt,* petitioner requested the district court to hold his prior habeas case in abeyance while he exhausted his ineffective assistance of counsel claims in the Ohio courts, but instead, the court dismissed the petition without prejudice. It also appears from the record that petitioner acted with reasonable diligence from the time the prior petition was dismissed until he filed the instant petition, in that he filed his motion for delayed reopening with the Ohio Court of Appeals a little over a month after the prior petition was dismissed and returned to this Court within a month after the Ohio Supreme Court issued its final order dismissing petitioner's appeal in the reopening matter. On the other hand, the prior petition only alleged exhausted claims as grounds for relief, which have not been reasserted as grounds for relief in the instant action. Moreover, petitioner did not bring to the Court's attention the fact that he wished to pursue relief on the additional ineffective assistance of counsel claims, which had never been raised before, until September 25, 2000, *after* the statute of limitations had expired 20 days earlier. *Cf. Hollins v. Knowles,* No. C03-0120MMC(PR), 2003 WL 21640479, at *3 (N.D. Cal. July 9, 2003) (unpublished) (refusing to equitably toll the statute of limitations during the pendency of prior timely-filed habeas action in part because the claims asserted in the prior petition had been fully exhausted, and petitioner voluntarily dismissed that petition with only 40 days remaining in the one-year limitations period in order to exhaust new claims he wanted to add as grounds for relief).

As mentioned above, *see supra* p. 12, at the time petitioner's first petition was dismissed, the established practice of this Court's district judges was to equitably toll the limitations period, subject to certain specified conditions, during the pendency of all timely-filed habeas petitions when such petitions were dismissed without prejudice to refiling on exhaustion grounds. Later, in response to Justice Steven's concurring opinion in *Duncan*, the Sixth Circuit issued decisions clearly stating its preference for staying rather than dismissing petitions containing unexhausted claims. *See, e.g., Griffin v. Rogers,* 308 F.3d 647, 652 & n.1 (6th Cir. 2002); *Hargrove v. Brigano,* 300 F.3d 717, 719-20 (6th Cir. 2002); *Hill v. Anderson,* 300 F.3d 679, 683 (6th Cir. 2002). In compliance with the Sixth Circuit's stated preference, the current practice of this Court's district judges is to administratively stay all petitions otherwise subject to dismissal on exhaustion grounds, thereby terminating the cases on the Court's active docket pending the petitioner's exhaustion of available state remedies in accordance with the same conditions specified by

15

the Court under the prior equitable tolling practice. Both the prior equitable tolling and current stay approaches have been employed by the Court across the board, without regard to the particular circumstances posed by each case, as a means to address in a blanket fashion the equitable concern raised by Justice Stevens in *Duncan* that federal habeas review will be denied to those petitioners unable to file petitions within the one-year limitations period because their previous timely-filed habeas petitions, later dismissed without prejudice on exhaustion grounds, were pending during that one-year window of opportunity. *See Duncan,* 533 U.S. at 182-84 (Stevens, J., concurring).

Petitioner's prior habeas action, dismissed right after *Duncan* was decided, is the only case before this Court where neither the equitable tolling nor the stay approach were employed. In that one case, respondent filed an objection to the Magistrate Judge's recommendation made in accordance with the then-established practice of the Court to provide for the equitable tolling of the statute of limitations in the order dismissing the petition without prejudice on exhaustion grounds. (*See* Doc. 3, Ex. V, pp. 3-4). Respondent argued that most circuit courts addressing the issue had determined that a federal habeas petition could not toll the limitations period under the statutory tolling provision, 28 U.S.C. § 2244(d)(2). (*See id.*). While respondent's objection was pending, the Supreme Court issued its decision in *Duncan* affirming respondent's position. Apparently unaware of Justice Stevens' concurring opinion in *Duncan* suggesting the Court's equitable powers may be invoked despite the unavailability of tolling under § 2244(d)(2), *see supra* p. 14, the district judge upheld the respondent's objection under the authority of *Duncan* and declined to equitably toll the statute of limitations in accordance with the Court's prior practice. (*See id.,* pp. 6-8).

As discussed above, *see supra* pp. 14-15, since that time, several courts following Justice Stevens' lead have permitted equitable tolling during the pendency of a prior federal habeas petition. Moreover, the Sixth Circuit itself has acknowledged the validity of Justice Stevens' concerns in *Duncan*, which the justice suggested could be allayed by the district court either staying the original habeas proceeding until petitioner exhausts his state court remedies or equitably tolling the limitations period during the pendency of the first habeas petition. *See Duncan,* 533 U.S. at 182-83 (Stevens, J., concurring). Although, as discussed above, *see supra* p. 15, the Sixth Circuit favors the stay over the equitable tolling approach, the court has expressed approval for both of Justice Stevens' suggested approaches in dealing with "the preclusion of a timely filed petition for the writ due to the need to accord state courts the opportunity to adjudicate claims." *Palmer v. Carlton,* 276 F.3d 777, 780 (6th Cir. 2002); *see also Hargrove,* 300 F.3d at 719-20 (affirming the district court's decision employing the equitable tolling practice, which was "reasonable under the

circumstances of th[e] case and under the conditions set forth by the district court" placing reasonable time restrictions on petitioner with respect to his pursuit of state remedies and return to federal court).

Because of the unique time in which it fell, in the immediate aftermath of *Duncan*, petitioner's prior petition was the only timely filed petition not accorded the protection of either a stay or equitable tolling by this Court while petitioner returned to the state courts to exhaust an available remedy. Therefore, this Court is reluctant to find that in the particular circumstances presented by this case, petitioner is not entitled to receive the benefit of equitable tolling during the pendency of that prior petition.

Accordingly, although the question is admittedly close, this Court RECOMMENDS that the March 18, 2003 Order (Doc. 8), adopting the undersigned Magistrate Judge's Report and Recommendation to dismiss Grounds One through Three with prejudice as time-barred (*see* Doc. 5), be VACATED and an ORDER entered requiring respondent to file a supplemental return of writ in accordance with this Court's Order of February 20, 2002 (*see* Doc. 2) responding to petitioner's claims alleged in Grounds One through Three, as well as specifically addressing the issue whether petitioner may have waived these claims due to his procedural default in failing to file a timely reopening application in the state court of appeals.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's claim alleged in Ground Four of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1, p. 6) be DENIED with prejudice, and that a certificate of appealability should not issue with respect to that claim, which has been addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

2. The March 18, 2003 Order (Doc. 8), adopting the undersigned Magistrate Judge's Report and Recommendation to dismiss Grounds One through Three as time-barred (*see* Doc. 5), be VACATED and an ORDER entered requiring respondent to file within forty (40) days of the Order adopting this Report and Recommendation a supplemental return of writ in accordance with this Court's Order of February 20, 2002 (*see* Doc. 2) responding to petitioner's claims alleged in Grounds One through Three, as well as specifically addressing whether petitioner may have waived these claims due to his procedural default in failing to file a timely reopening application in the state courts.

Date:  4/7/04        s/Timothy S. Hogan
    cbc                                Timothy S. Hogan
                                   United States Magistrate Judge

J:\BRYANCC\2004 habeas orders\02-100deny-reopenapp-cl.vacateSOLrr.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Derrick Reaves,
    Petitioner,

           v.

James Erwin,
    Respondent.

Case No. 1:02cv100
(Weber, J.; Hogan, M.J.)

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).