## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| DERRICK REAVES, | : | Case No. 1:02CV100 |
| | : | |
| Petitioner, | : | Judge Weber |
| | : | |
| v. | : | Magistrate Judge Hogan |
| | : | |
| TIM BRUNSMAN, Warden, | : | |
| | : | **HABEAS CORPUS** |
| Respondent. | : | |

### RESPONDENT'S SUPPLEMENTAL ANSWER/RETURN OF WRIT

Respondent denies each of the allegations made by Petitioner except those expressly admitted herein. Petitioner Derrick Reaves is state prisoner number 349-081 at the Chillicothe Correctional Institution in Chillicothe, Ohio. Respondent Tim Brunsman is the warden at that institution. Reaves brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hereinafter, Respondent shows cause why the writ should not be issued.

Respectfully submitted,

JIM PETRO
Attorney General

s/ Jerri L. Fosnaught
JERRI L. FOSNAUGHT (0077718)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7233
(614) 728-9327 facsimile
jfosnaught@ag.state.oh.us

Counsel for Respondent

## STATEMENT OF FACTS

The Court of Appeals of Ohio, First Appellate District, Hamilton County, Ohio set forth

the facts of this case on direct appeal.  These binding factual findings "shall be presumed to be

correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.

1998), *cert. denied*, 527 U.S. 1040 (1999):

> In the early morning of April 17, 1996, Richard Wilson visited Rodean Frazier's residence at 3410 Woodburn Avenue.  At about 12:30 a.m., several of Frazier's neighbors were awakened by the sound of voices coming from the street.  They heard people arguing, followed by the sound of someone being beaten by a stick.  Two of the witnesses saw a group of five or six men circle around Wilson and beat him with weapons and kick him after he had fallen to the ground.  None of these neighbors was able to identify the assailants.

> After receiving several 911 calls from neighbors, the police arrived on the scene and found Wilson dead in the middle of the street.  At trial, the coroner testified that Wilson had suffered dozens of internal and external injuries as a result of the beating, including three fatal head fractures.  He stated that the number of injuries and angles from which the blows were delivered indicated the use of different objects by several individuals.  The pattern of the injuries indicated that Wilson was beaten with objects such as a shovel spade, a shovel handle, and a shoe or boot.

> The police began investigating the crime immediately.  Witnesses stated that, after the beating, the assailants ran to the house occupied by Rodean Frazier.  Frazier's house was known by his neighbors as a "crack house."  The police approached Frazier's house.  Frazier and Richard Drain were in the living room.  When asked if they knew anything about the homicide, they both said "no."  However, Frazier indicated to the investigating officer that he knew something.  Realizing that Frazier was the subject of an open warrant concerning an unpaid traffic ticket, the officer took him down to a police station.  At 3:25 a.m. and 10:24 a.m. on April 17, 1996, Frazier gave taped statements to two Cincinnati police officers.  In these statements, Frazier identified Reaves as a participant in the beating.  Reaves was indicted the following week.

> * * *

> At trial, Frazier testified that, on the evening of April 16, 1996, a group of men, including Reaves, Rogers, Meadows and Drain, were present at his residence as guests of Frazier's cousin, who occupied the upstairs apartment of

the house.  The men were at various times on his porch, in his side yard, or in his basement drinking beer and smoking marijuana.  At one point the men were in his living room, and Drain was making racial slurs and bragging about "downing the next white guy" who walked into the room.  The others began joining in the racial slurs and were egging Drain on.  Frazier described the situation as volatile.

When Wilson, a white man, came to his side door, Frazier told him to leave.  While walking away, someone told Wilson that Frazier wanted to see him inside.  Wilson came in the front door and called for Frazier.  Upon hearing Wilson again, Frazier left the kitchen where he was cooking dinner and met Wilson in the living room.  He grabbed Wilson by the arm and led him towards the side door in an effort to separate him from Drain, who had followed Wilson inside and was chasing him with a two-by-two tomato stake.  After warning Drain that he had a gun, Wilson left the house by the side door and walked out to the street.  Drain retraced his steps and left the house through the front door, eventually meeting Wilson again in the street, a few doors down from Frazier's apartment.  The two began throwing punches.  Then a group of men joined Drain, encircling Wilson.  Frazier watched from the threshold of his front doorway as Wilson was knocked to the ground and beaten to death.

At trial, Frazier testified that Reaves was not at his house during the time of the beating, although he had been there earlier.  However, Frazier also admitted that he had told the police immediately after the crime that Reaves was involved in the beating.  Frazier explained that he was mistaken when he implicated Reaves in the beating in his earlier taped statements to the police.  Frazier's taped statements identifying Reaves as an assailant were played to the jury and admitted as substantive evidence.

In addition to Frazier's testimony, the state presented the testimony of Regina Jeter, who lived in Frazier's apartment.  She knew Wilson and his assailants.  She testified that she was in her back bedroom when she heard Wilson say that he had a gun and was going to shoot everyone.  She went outside on the porch after hearing the commotion and testified that she saw Drain, Rogers, Meadows and Reaves beating up Wilson.  However, Jeter also admitted that she told the police initially that she did not see the assault.

Frazier testified that Jeter was in the back bedroom during the beating, not on the porch, and that she did not see anything.

Several other neighbors testified, but none could identify any of the assailants.

The defense presented the testimony of Rashida Lidell, who lived upstairs from Frazier.  She testified that Reaves and Rogers had been at her apartment on the afternoon of April 16, 1996, that they left after she braided their hair, and that they did not return to her apartment or to Frazier's.  She also testified that Jeter

told her immediately after the murder that she was asleep the whole time and did not see anything. On cross-examination Lidell admitted that she was not downstairs after 9 p.m.

After hearing all the evidence, the jury found Reaves guilty of murder.

(Doc. #3, Respondent's Motion to Dismiss, Exhibit I, ¶2-5.)

## STATE CONVICTION

Petitioner Derrick Reaves, along with three co-defendants, was indicted by the Grand Jury of Hamilton County on April 24, 1996 for the murder of James Richard Wilson (O.R.C. § 2903.02(A)). (Doc. #3, Respondent's Motion to Dismiss, Exhibit A.) Reaves was originally tried with co-defendant Rogers, but the jury was unable to agree on a verdict as to Reaves. An order was entered discharging the jury on March 3, 1997. (Doc. #3, Respondent's Motion to Dismiss, Exhibit B.)

Reaves was tried again and a jury found him guilty as charged in the indictment. (Doc. #3, Respondent's Motion to Dismiss, Exhibits C, D.) The trial court sentenced to serve a term of incarceration of fifteen years to life. (Doc. #3, Respondent's Motion to Dismiss, Exhibit E.)

## DIRECT APPEAL

Reaves, through counsel, timely appealed to the First District Court of Appeals and raised the following assignments of error:

1.    The trial court erred to defendant's prejudice in denying his motion to suppress identification evidence in the form of two unsworn statements and handwritten notes on a diagram allegedly made by a witness who was available to testify and had firmly recanted those statements.

2.    The trial court erred to defendant's prejudice by denying his motion in limine and in admitting hearsay evidence concerning threats allegedly made against the witness, in violation of defendant's right to confrontation and to due process of law under the Ohio and United States Constitutions.

3.    The trial court erred to defendant's prejudice when it admitted, over counsel's objection, photographs and slides of the crime scene and

4

autopsy.

4.    The trial court erred to defendant's prejudice when it permitted the State to strike the only member of defendant's race then seated in the jury box, and one of only three members in the entire jury panel, without adequately establishing non-discriminatory reasons.

5.    The trial court erred to defendant's prejudice when it denied counsel's motions for a verdict of acquittal, and again when it accepted and journalized verdicts of guilty which were not supported by relevant and credible evidence.

(Doc. #3, Respondent's Motion to Dismiss, Exhibit G.)  The State filed a brief in response on March 6, 1998.  (Doc. #3, Respondent's Motion to Dismiss, Exhibit H.)  On December 18, 1998, the Court of Appeals overruled each assignment raised by Reaves and affirmed the judgment of the trial court.  (Doc. #3, Respondent's Motion to Dismiss, Exhibits I, J.)

Reaves failed to perfect a timely appeal to the Supreme Court of Ohio.  (Doc. #3, Respondent's Motion to Dismiss, Exhibit K.)  A notice of appeal and a motion for a delayed appeal were filed in the Supreme Court of Ohio on February 24, 1999.  (Doc. #3, Respondent's Motion to Dismiss, Exhibits L, M.)  The State filed a brief in response.  (Doc. #3, Respondent's Motion to Dismiss, Exhibit N.)  On April 7, 1999, the Supreme Court of Ohio granted Reaves' motion for a delayed appeal was granted.  (Doc. #3, Respondent's Motion to Dismiss, Exhibits O, P).

Reaves, through counsel, filed a memorandum in support of jurisdiction raising the following two propositions of law:

1.    A trial court should not permit a prior inconsistent identification statement into evidence when the circumstances demonstrate the unreliability of the prior identification.  801(D)(1)(c): 14th Amendment Due Process Clause; 6th Amendment, Confrontation Claim.

2.    Where crime scene and autopsy photographs are sufficiently gruesome where its probative value is substantially outweighed by the danger of undue prejudice and needless presentation of cumulative evidence, it is an

> abuse of discretion for trial courts to admit them into evidence.  Evid. R.
> 403(A)(B); 14th Amendment, Due Process Clause.

(Doc. #3, Respondent's Motion to Dismiss, Exhibit Q.)  The State filed a response.  (Doc. #3, Respondent's Motion to Dismiss, Exhibit R.)   The Supreme Court of Ohio issued an Entry denying leave to appeal and dismissing the appeal as not involving any substantial constitutional question.  (Doc. #3, Respondent's Motion to Dismiss, Exhibits S, T.)

### FIRST FEDERAL HABEAS CORPUS PETITION

On June 27, 2000, Reaves filed a petition for a writ of habeas corpus in this Court raising the following claims:

> **GROUND ONE:**  Conviction obtained in violation of 6th and 15th Amendment Right to Confrontation
>
> **Supporting Facts**:  Prosecution was allowed to adduce hearsay out-of-court statement to establish identity without Petitioner being allowed substantive right to confrontation.
>
> **GROUND TWO**:  Conviction obtained in violation of 5th and 14th Amendment Right to Due Process of Law.
>
> **Supporting Facts**:   Prosecution allowed to adduce excessive amount of cululative [sic] & gruesome photographs of victim which prejudiced jury as matter of law.

(Doc. #3, Respondent's Motion to Dismiss, Exhibit U, Case No. 00-CV-519.)  Reaves did not present a claim of ineffective assistance of counsel in his petition.   Nevertheless, Reaves subsequently filed a motion to dismiss his habeas petition because he wanted to exhaust claims of ineffective assistance of counsel that were not raised in his petition.  Respondent filed a response indicating that until the original habeas petition is amended, there is no claim that requires further exhaustion by Reaves.  In the Court's July 13, 2001 Order, the Court granted Reaves' motion to dismiss, dismissed the petition without prejudice, and specifically indicated that the AEDPA statute of limitations would not be tolled in this case during the pendency of the

federal habeas Case No. 00-CV-519.  (Doc. #3, Respondent's Motion to Dismiss, Exhibit V.)

## APPLICATION FOR DELAYED REOPENING

On August 31, 2001, Reaves returned to the state appellate court and filed a Motion for Leave to File Delayed Motion to Reopen Appeal as of Right.  (Doc. #3, Respondent's Motion to Dismiss, Exhibit W.)  The Court of Appeals denied the reopening of the appeal as untimely noting that Reaves "filed his application almost two and one-half years after the ninety-day period had expired.  (Doc. #3, Respondent's Motion to Dismiss, Exhibit X.)

Reaves appealed to the Supreme Court of Ohio and raised the following propositions of law:

1.     It was a violation of the Appellant's absolute right to procedural due process of law under the Ohio and United States Constitution for the Court of Appeals to grant Plaintiff-Appellee's Motion to Dismiss.

2.     It was a violation of the Appellant's absolute right to procedural due process of law under the Ohio and U.S. Constitution for the Court of Appeals to grant the Plaintiff-Appellee Summary Judgment.

3.     The Court of Appeals deprived the Appellant of his absolute right to procedural due process of law where the Court failed to find that the Appellant made a genuine showing that he may have been deprived of the effective assistance of appellate counsel and grant his application to reopen the appeal.

(Doc. #3, Respondent's Motion to Dismiss, Exhibits Y, Z.)  The Supreme Court of Ohio issued an Entry dismissing the appeal as not involving any substantial constitutional question.  (Doc. #3, Respondent's Motion to Dismiss, Exhibit AA).

## SECOND FEDERAL HABEAS CORPUS PETITION

Reaves is now before the Court with a second habeas corpus petition signed January 23, 2002 and filed February 13, 2002, raising the following grounds for relief:

**GROUND ONE**: Conviction obtained in violation of 6th 7 14th Amendment right to effective assistance of trial counsel.  (sic)

**Supporting Facts**: Trial counsel rendered ineffective assistance of counsel where he failed to request and receive lesser included offense instruction to the jury on voluntary manslaughter.

**GROUND TWO:**  Conviction obtained in violation of 6th and 14th Amendment right to effective assistance of trial counsel.

**Supporting Facts**:  Trial counsel rendered ineffective assistance of counsel at trial where he failed to recognize, argue and brief the fact that Petitioner's conviction for Murder violates the double inference rule and Due Process of Law.

**GROUND THREE**:  Conviction obtained in violation of Pettioner's (sic) 6th & 14th Amendment right to effective assistance of appellate counsel.

**Supporting Facts**:  Appellate counsel rendered ineffective assistance of counsel on direct appeal in State courts where she failed to argue trial counsel's ineffectiveness for not requesting lesser-included offense jury instructions and the double inference violation.

**GROUND FOUR**:  State Court of Appeals denied Petitioner his absolute right to procedural due process of law in overruling reopening motion.

**Supporting Facts**:  State court of appeals deprived petitioner of his absolute right to procedural due process of law in denying the reopening motion where Petitioner demonstrated cause for his procedural default.

(Doc. #1).    Respondent previously filed a Motion to Dismiss based upon the statute of limitations set forth in 28 U.S.C. §2244(d), as amended by §101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  (Doc. #3).  In a Report and Recommendation filed February 25, 2003, the Magistrate Judge recommended that Reaves' first three grounds be dismissed a barred by the AEDPA statute of limitations, and ordered Respondent to address the merits of Reaves' fourth ground for relief.  (Doc. #5).  The District Court issued an Order adopting the Magistrate Judge's Report and Recommendation, and dismissing Reaves' first three grounds with prejudice as time-barred.  (Doc. # 8.)

On March 10, 2003, Respondent filed a Return of Writ in which Respondent asserted that Reaves' fourth ground for relief was not cognizable in habeas corpus.  (Doc. #7.)  In a Report

and Recommendation filed April 8, 2004, the Magistrate Judge recommended that Reaves'
fourth ground for relief be denied with prejudice, and that the Order dismissing Reaves' first
three grounds for relief be vacated.   The Magistrate Judge granted Reaves' equitable tolling for
the period during which his prior petition was pending.  (Doc. #13.)  In an Order filed on April 4,
2005, District Court adopted the Magistrate Judge's Report and Recommendation.  (Doc. #15.)

      In an Order filed on April 4, 2005, Respondent was ordered to file a supplemental return
of writ within forty days.  Thus, Respondent has filed this Supplemental Return of Writ.[1]

## I.    PROCEDURAL DEFAULT

      Reaves has procedurally defaulted each of his first three grounds for relief.

### A.    Standard

      Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28
U.S.C. § 2254, he or she must exhaust his or her state court remedies by fairly presenting all of
his or her constitutional claims to the highest state court, and to all appropriate state courts prior
to that, so that the state is given the opportunity to pass upon and correct alleged violations of its
prisoners' federal rights.  28 U.S.C. § 2254 (b) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838,
119 S.Ct. 1728, 1731 (1999); *Duncan v. Henry*, 513 U.S. 364 (1995); *Lyons v. Stovall*, 188 F.3d
327, 331 (6th Cir. 1999).  In Ohio, this includes direct and delayed appeals to the Ohio Court of

---

[1] Respondent continues to assert that Reaves is not entitled to equitable tolling for the time that his prior habeas petition was pending. First, Reaves did not present an ineffective assistance of counsel claim in his petition or seek to amend his petition to assert the claim. Thus, he was exhausting a state court remedy for a claim that was not raised in his petition. Second, Reaves failed to show good cause for his failure to exhaust his claims first in the state court. *Rhines v. Weber*, 544 U.S. ___, 125 S. Ct. 1528; 161 L. Ed. 2d 440, 451 (2005). Third, Reaves cannot demonstrate that he was diligent in pursuing his rights, or that the respondent would not be prejudiced by the delay. *Dunlap v. United States*, 250 F.3d 1001, 1008-09 (6th Cir.), cert. denied, 151 L. Ed. 2d 566, 122 S. Ct. 649 (2001). As the United States Supreme Court recently found, pro se representation alone or procedural ignorance has never been accepted by the Court as an excuse for prolonged inattention when a statute's clear policy calls for promptness. *Johnson v. United States*, 544 U.S. ___, 125 S. Ct. 1571 (2005). Certainly, diligence cannot be found where Reaves filed his application for delayed reopening eleven months after he announced in his federal habeas proceeding his intention to file an application for delayed reopening, and almost two and one-half years after a timely application to reopen his direct appeal could have been filed.

Appeals and the Supreme Court of Ohio.  *Mackey v. Koloski*, 413 F.2d 1019 (6th Cir. 1969); *Allen v. Perini*, 424 F.2d 134, 140 (6th Cir. 1970).

Procedural default occurs when the petitioner fails to fairly present his or her federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error.  In order to fairly present habeas claims to the state courts, they must be presented at the first available opportunity.  *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).

A federal habeas court is barred from hearing issues that could have been raised and litigated in the state courts, but were not, and which now may not be presented to those state courts due to procedural default or waiver.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  The habeas petitioner has the burden of overcoming this bar by showing cause for the default and actual prejudice.  *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).

Normally, a federal habeas court will consider default in the state courts to have occurred if the last "reasoned state judgment rejecting a federal claim" makes a plain statement of such state procedural default.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  No such statement is necessary if the relevant issues were not presented at all to the state court(s).  *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989).

Before an alleged federal constitutional error may be reviewed in federal habeas corpus, a petitioner must exhaust his state court remedies by affording the state courts "a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).  In order to meet the requirements for exhaustion, "the federal claim [must be] fairly presented to the state courts . . ."  *Duncan v. Henry*, 513 U.S. at 365.

In determining whether a petitioner has fairly presented a federal constitutional claim to the state courts, a habeas court may consider whether

> (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law. *See Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). A petitioner need not cite "chapter and verse" of constitutional law, *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987), but "general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated." *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (6th Cir. 1984)).

*Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). Failure to fairly present the federal claim, especially if the petitioner is now barred from returning to the state courts with it, waives the claim for the purposes of federal habeas corpus review. *Gray v. Netherland*, 518 U.S. at 162.

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir. 1998) (citing *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986)). First, the Court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the Court must determine whether the state courts actually enforced the state sanction. Third, it must be determined whether the state procedural rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the Court has determined that a state procedural rule was violated and that the rule was an adequate and independent state ground, then petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional

error. The habeas petitioner bears the burden of overcoming the procedural bar by showing cause and actual prejudice.

In order to show cause, petitioner must prove "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. at 722, 753 (1991); *Shorter v. Ohio Dept. of Rehab. and Corrections*, 180 F.3d 723, 725 (6th Cir. 1999). Prejudice exists where, but for the error, the defendant (petitioner) "might not have been convicted," *Reed v. Ross*, 486 U.S. 1 (1984), or the errors undermined the accuracy of guilt, *Smith v. Murray*, 477 U.S. 527, 538-39 (1986). In *Coleman*, 501 U.S. at 748, the Court stated that the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct "a fundamental miscarriage of justice." A fundamental miscarriage of justice is usually interpreted to mean that an innocent person was convicted. *Sawyer v. Whitley*, 505 U.S. at 339, n. 6.

### B.    Application to Reaves

The claims in Reaves' first and second grounds for relief have been procedurally defaulted. Reaves raised these claims for the first time in the First District Court of Appeals in the context of a claim of ineffective assistance of appellate counsel — Reaves claimed that his appellate counsel was ineffective for failing to raise the claims presented in his first and second grounds for relief. (Doc. #3, Respondent's Motion to Dismiss, Exhibit W.) The Court of Appeals denied Reaves' delayed application to reopen his appeal. (Doc. #3, Respondent's Motion to Dismiss, Exhibit X.) Reaves' delayed application for reopening does not, however, preserve the underlying claims for habeas review. *Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004); *Lott v. Coyle*, 261 F.3d 594, 612-13 (6th Cir. 2001). Thus, Reaves has procedurally defaulted his first and second grounds for relief.

Reaves has procedurally defaulted his third claim for relief because he failed to raise the claim in a timely application to reopen his direct appeal. As a consequence of Reaves' failure to comply with the filing requirements for an application to reopen pursuant to Appellate Rule 26(B), the first factor of the *Maupin* test has been fully satisfied. The second *Maupin* criteria has also been satisfied because the Ohio courts necessarily enforced this procedural sanction when the appellate court found that Reaves "filed his application almost two and one-half years after the ninety-day period had expired," and that Reaves' claim of "ignorance of the law, to the extent that it is alleged here to be a consequence of the lack of counsel, does not constitute good cause for a filing delay."

The third *Maupin* criteria has been met because the Sixth Circuit definitively held that the application of the "good cause" requirement to deny an untimely Rule 26(B) application operates as an adequate and independent state procedural ground to foreclose federal habeas review of an ineffective assistance of appellate counsel claim. *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002). Accordingly, the ineffective assistance of appellate counsel claim asserted by Reaves in his habeas petition has been procedurally defaulted.

Additionally, although Reaves did present the claims raised in his first three grounds for relied in his application for delayed reopening filed in the First District Court of Appeals, Reaves did not present any of these claims to the Supreme Court of Ohio on appeal. Rather, Reaves' raised three claims that the Court of Appeals erred in denying his delayed application to reopen his direct appeal. (Doc. #3, Respondent's Motion to Dismiss, Exhibits Y, Z.) Reaves committed a procedural default by failing to present these claims to State courts. *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Reaves has waived the claims for purposes of federal habeas corpus review because he did not provide the highest state court in Ohio with an opportunity to

correct any alleged constitutional error. *Id.*

Because Reaves has procedurally defaulted all of his habeas claims, he is now required to demonstrate both cause and prejudice. Reaves has failed to demonstrate "cause" because he has failed to show that an objective factor external to the defense impeded counsel's efforts to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488. Ineffective assistance of appellate counsel may not constitute cause for procedural default where, as here, the claim also has been procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Simply and succinctly put, under Ohio law, Reaves failed to raise these claims properly in the state courts, and failed to demonstrate sufficient justification for the default in this federal action. Reaves has also failed to demonstrate "prejudice" because Reaves has failed to show a disadvantage "infecting" the trial with constitutional error. *United States v. Frady*, 456 U.S. 152, 168. The *Maupin* criteria have been entirely satisfied.

## Actual Innocence

In extreme cases, a federal habeas court may hear a defaulted constitutional claim where cause and prejudice cannot be shown if the petitioner shows that his conviction is the result of a fundamental miscarriage of justice. A fundamental miscarriage of justice is the conviction of one who is "actually innocent." *See Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 496. In *Murray*, the Supreme Court recognized an exception to the cause and prejudice requirement for a petitioner who could demonstrate actual innocence. *Id.* However, actual innocence means factual innocence as compared with legal innocence. *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). "A prototypical example of actual innocence in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Sawyer v. Whitley,* 505 U.S. 333 (1992).

To come within the actual innocence exception to the required showing of cause and

prejudice with respect to an abuse of the writ, a habeas petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. That is, the petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in the light of the new evidence. In reaching this conclusion, the habeas court may need to make credibility determinations. *Schlup v. Delo*, 513 U.S. 298 (1995), adopting standard from *Murray v. Carrier*, 477 U.S. 478 (1986).

This is a different standard from that of *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, the mere existence of sufficient evidence to convict is determinative, while that is not true under *Carrier.* The question is whether the petitioner presents evidence of innocence "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." Trial courts will be able to resolve the great majority of actual innocence claims routinely without any evidentiary hearing. *Schlup v. Delo*, 513 U.S. 298 (1995).

Young has not presented any evidence of actual innocence to cause the court to hear his procedurally defaulted claims where cause and prejudice cannot be shown.

## II.    MERITS

Respondent asserts that none of Reaves' first three grounds for relief may be reviewed on their merits.  However, Respondent has provided this merits review pursuant to this Court's Order filed April 4, 2005.

### A.    Standard of Review.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") substantially altered the previously existing statutory basis for federal habeas corpus review of state criminal convictions by strengthening the presumption of correctness given to state court determinations. As Justice O'Connor, speaking for the majority of the Supreme Court, recently stated, "[§ 2254(d)(1)] modifies the role of federal habeas courts in reviewing petitions filed by state prisoners." *Williams v. Taylor,* 529 U.S. 362, 403 (2000).

Title 28 § 2254 now reads:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, the United States Supreme Court held as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established

> Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13.

The Sixth Circuit Court of Appeals has recognized that by amending § 2254(d)(1) through the AEDPA, Congress intended to place "reasonable state court judgments beyond the scope of federal review." *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998). Similarly, the *Williams* Court held "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

The Sixth Circuit has provided further guidance by explaining how *Williams* is to be applied:

> In *Williams*, the Court held that an "unreasonable application" of federal law established by Supreme Court precedent occurs if "the state court identifies the correct legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular prisoner's case." 120 S.Ct. at 1520. Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Id*. Although the Court failed to specifically define "objectively reasonable," it observed that an unreasonable application of federal law is different than an incorrect application of federal law." *Id*. at 1522. Thus even if we believe that a state court incorrectly applied federal law, we must refuse to issue the writ of habeas corpus if we find that the state court's decision was a reasonable one.

*Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

Where the state court has not articulated its reasoning, federal courts should conduct an independent review of the record and applicable law by focusing on the *result* of the state court's decision to determine whether the state court decision is contrary to United States Supreme Court precedent, unreasonably applies clearly established Supreme Court precedent, or is based on an unreasonable determination of the facts in light of the evidence presented. *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir. 2000). "That independent review, however, is not a full, de novo review of the claims but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* at 943.

**B.    APPLICATION TO REAVES**

**1.    Reaves' first and second grounds for relief are without merit.**

In his first ground for relief, Reaves alleges that he was denied the effective assistance of counsel when counsel failed to request a jury instruction on a lesser included offense, *i.e.*, voluntary manslaughter. In his second ground for relief, Reaves alleges that he was denied the effective assistance of counsel because trial counsel did not argue that trying Reaves as an aider and abettor violated the double inference rule.

In *Strickland*, the Court explained the test for determining the effectiveness of counsel:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has mandated:

18

> Judicial scrutiny of counsel's performance must be highly deferential. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689.

Thus, in order to show that counsel's performance was deficient, a Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential — the court must presume that the challenged action might be considered sound trial strategy. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. The Supreme Court stated that the *Strickland* holding that counsel is "strongly presumed" to make decisions in the exercise of professional judgment "has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel has a sound strategic motive.'" *Yarborough v. Gentry*, 124 S. Ct. 1; 157 L. Ed. 2d 1 (2003) (*per curium*) (citing *Massaro v. United States*, 123 S. Ct. 1690, 1694 (2003)).

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Id.* at 694. *See also Darden v. Wainright*, 477 U.S. 168 (1986); *Blackburn v. Foltz*, 828 F.2d

1177 (6th Cir. 1987). This Court has also held that the test for the prejudice prong is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell*, 506 U.S. 364 (1993)). "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow*, 977 F.2d 222 (6th Cir. 1992).

A habeas court need not determine whether there was deficient performance by counsel before considering the prejudice issue. *Id*. at 697. Therefore, if a federal habeas corpus court fails to find **either** prong of the *Strickland* test, a writ will not issue.

The Sixth Circuit Court of Appeals has applied *Strickland* to reject habeas corpus claims regarding strategic defense counsel decisions. In *Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984), the Sixth Circuit held:

> In *Strickland, supra,* the Supreme Court stated that where there is more than one possible defense, and counsel conducts a substantial investigation into the possible defenses, the strategic choice made as a result of the investigation is "virtually unchallengeable," the Court noted additionally that, even should counsel fail to conduct a substantial investigation into each of several plausible lines of defense, the representation might nonetheless be effective.

*See also Chandler v. Jones*, 813 F.2d 773 (6th Cir. 1987); *Krist v. Foltz*, 804 F.2d 944 (6th Cir. 1986).

The United States Supreme Court revisited the prejudice prong of the *Strickland* test in *Lockhart v. Fretwell,* 506 U.S. 364 (1993). In *Lockhart*, the Court held that with respect to Sixth Amendment claims, a defendant must show that "[t]he 'prejudice' component of the *Strickland* test does not implicate these concerns. It focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id*. at 372. The Court further explained that "unreliability or unfairness does not result if the

ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*.

In *Bell v. Cone*, 122 S. Ct. 1843, 1850 (2002), the Court again emphasized, "without proof of both deficient performance and prejudice to the defense, [under *Strickland*]…it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." (internal quotation marks and citation omitted).

First, Reaves' trial counsel's decision to not request a jury instruction on voluntary manslaughter was consistent with Reaves' trial strategy. The defense theory in this case was that Reaves "was not there" when Richard Wilson was murdered. (Exhibit 1, Tr. of Defense Closing Argument pp. 705-09, 713-15.)   This theory had some support because one of the witnesses for the state, a witness who said he observed Wilson being beaten to death in front of his residence, testified that Reaves was not there when Richard Wilson was murdered.[2]   Thus, Reaves has failed to prove that his trial counsel was deficient or that counsel's performance prejudiced the defense.

Second, Reaves' claim that trial counsel was ineffective for failing to argue that the instruction on aiding and abetting or complicity violated the double inference rule is patently frivolous.   The trial court properly instructed the jury regarding permissible and impermissible inferences and regarding complicitor liability.   (Exhibit 2, Tr. of Jury Instructions pp. 740-41, 743-46.)   Reaves has failed to prove that his trial counsel was deficient or that counsel's performance prejudiced the defense.   Thus, Reaves' ineffective assistance of trial counsel claims are without merit.

---

[2] However, the witness did admit that he initially told the police Reaves was involved in the beating.

## 2.     Reaves' third ground for relief is without merit.

Reaves contends that his appellate counsel was ineffective.  Reaves alleges that his appellate counsel was ineffective for failing to raise and argue trial counsel's ineffectiveness for not requesting a jury instruction for a lesser-included offense and the "double inference violation."  (Doc. #1.)

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment.  *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to Strickland's two-pronged test.  *See, e.g., Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986).

A defendant must therefore show that either (1) counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, defendant would have prevailed on appeal, *Miller*, 882 F.2d at 1434 & n.9 (citing *Strickland*, 466 U.S. at 688, 694; *Birtle*, 792 F.2d at 849), or (2) that counsel's error is the type resulting in the "actual or constructive denial of the assistance of counsel altogether" which constitutes prejudice per se.  *See Lozada v. Deeds*, 964 F.2d 956, 958-59 (9th Cir. 1992) (failure to file notice of appeal without petitioner's consent constitutes prejudice per se).

However, appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Miller*, 882 F.2d at 1434 n.10.  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  *Id.* at 1434.  As a result, appellate counsel will frequently remain above an objective standard of competence and have caused her client no prejudice for the same reason — because she declined to raise a weak issue.  *Id.*

Reaves' counsel chose which claims were strongest and raised said claims on appeal. Such action did not fall below an objective standard of reasonableness or constitute prejudice per se. The claims in Reaves' first and second grounds for relief are patently less meritorious than the claims that appellate counsel actually pursued on Reaves' behalf. Because the claims of ineffectiveness of trial counsel are not meritorious, Reaves' claims of ineffective assistance of appellate counsel also fail.

**III.    CONCLUSION**

Respondent moves this honorable federal habeas corpus Court to dismiss the habeas corpus Petition for the reasons set forth herein. Because the case can be decided from the record, no further hearing should be necessary. *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). This is not a waiver of hearing.

Respectfully submitted,

JIM PETRO
Attorney General

s/ Jerri L. Fosnaught
JERRI L. FOSNAUGHT (0077718)
Assistant Attorney General
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 644-7233
(614) 728-9327 (fax)
jfosnaught@ag.state.oh.us

Counsel for Respondent

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing ***Respondent's Supplemental Answer/Return of Writ*** was electronically filed on May 16, 2005.  I also certify that a copy of the foregoing was sent to Petitioner Derrick Reaves, # 349-081, at the Chillicothe Correctional Institution, P.O. Box 5500, Chillicothe, Ohio 45601, via 1st class U.S. Mail on this same day.


s/ Jerri L. Fosnaught
JERRI L. FOSNAUGHT
Assistant Attorney General